IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL B. McGUIRK and | : | CIVIL ACTION |
| JEANNIE E. McGUIRK, | : | |
| Individually and on behalf | : | |
| of their minor children, | : | |
| MICHAEL J. McGUIRK, a minor, | : | |
| and THOMAS C. McGUIRK, a minor, | : | |
| Plaintiffs | : | No. 02-CV-4341 |
| | : | |
| v. | : | |
| | : | |
| STATE FARM FIRE & CASUALTY | : | |
| COMPANY, | : | JUDGE FRANKLIN S. VAN ANTWERPEN |
| Defendant | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

**STATEMENT OF FACTS**

The pertinent facts necessary for resolution of this motion, as alleged in the Complaint, are

as follows:[1]  On June 28, 2000, the home of Plaintiffs Michael and Jeannie McGuirk, and their

minor children Michael and Thomas, suffered water damage.  Chief among the damage was the

saturation of interior drywall and carpeting in an addition to the McGuirk home.  (Compl. ¶8.)

Plaintiffs promptly reported the damage to their insurer, Defendant State Farm Fire & Casualty

Company ("State Farm").  At all times relevant to the Complaint, Plaintiffs' homeowners policy

with Defendant was in force.  One of Defendant's agents initially told Plaintiffs the water damage

would be covered.  (Compl. ¶10.)  Another of Defendant's agents (Purofirst of Conestoga Valley)

evaluated the damage to Plaintiffs' home on behalf of Defendant.  As a result of that evaluation,

Defendant issued a check in the amount of $1,340.68. This check was provided for repair of the water-damaged drywall, which Defendant determined was a covered loss. (Compl. ¶16.) Defendant and its agents then told Plaintiffs not to fix the drenched drywall or the carpet (which State Farm had refused to cover) despite knowing that this course of action would lead to mold growth. (Compl. ¶¶12-14.) Instead, Defendant told Plaintiffs to use the insurance proceeds to fix exterior damage on the roof of the home (damage State Farm determined was not covered by Plaintiffs' insurance policy).[2] (Compl. ¶12.) Relying on Defendant's instructions, Plaintiffs did not remove or otherwise attempt to fix the interior damage and allowed the drywall and carpeting to air dry.

Shortly after the damage occurred, Plaintiffs noticed that mold was growing in the area that had suffered the water damage and that Defendant had told Plaintiffs to allow to air dry. (Compl. ¶15.) Plaintiffs advised Defendant of the mold, but Defendant took no action to remediate the problem - indeed, Defendant's agent Purofirst was aware of the mold when it gave its recommendation that Plaintiffs allow the effected area to air dry. (Compl. ¶15.) Throughout the following year the mold continued to grow, despite the fact that no further water invasions occurred. (Compl. ¶21.) Plaintiffs began to experience health problems as a result of the mold. (Compl. ¶20.) In response to each request for assistance and coverage for the mold problem, Defendant failed to take any action on addressing the claim.

Instead, Defendant required Plaintiffs to take a myriad of often conflicting steps, each designed to delay resolution of their claim and the ever-increasing mold problem. For instance,

---

[1] The Complaint was filed pro se by Plaintiffs.
[2] Although State Farm refused coverage for the exterior of the house due to alleged defective construction, at no time prior to making its coverage determination had Defendant actually analyzed the home's exterior to provide a basis for its opinion. (Compl. ¶¶18-19.)

after initially instructing Plaintiffs to allow the affected drywall to air dry, State Farm told Plaintiffs

to cut out the drywall themselves and erect a barrier around the area of the house with mold.

(Compl. ¶24.)  After Plaintiffs balked at remediating the mold on their own, Defendant sent a mold

specialist to test the house; this individual, however, on State Farm's instruction, analyzed only part

of the home.  (Compl. ¶27.)  Defendant also denied coverage for damage caused by the mold, but

then shortly thereafter reversed itself, with the important caveat that State Farm would pay to clean

up only a portion of the property.  (Compl. ¶29.)  Despite repeated requests, Defendant has refused

to identify details of its expert's mold testing methods, even though information from an expert

Plaintiffs hired at their own expense demonstrated that the techniques Defendant's agent employed

did not meet accepted industry standards.  (Compl. ¶¶37, 46.)

Because it had become clear that the mold had spread throughout the house, by April of

2001, Plaintiffs requested temporary living expenses until the house could be cleared of toxic mold.

Defendant refused this coverage, and placed the burden (and considerable expense) of proving the

home was uninhabitable squarely on Plaintiffs.  (Compl. ¶33.)  Despite demanding that Plaintiffs

prove the house was unlivable due to mold growth, by mid-April 2001, Defendant's own expert had

crafted a partial remediation plan that required cleanup workers to use respirators, full body suits,

gloves and boots.  (Compl. ¶33.)  In an effort to meet the conditions Defendant imposed to obtain

temporary living expenses, Plaintiffs produced the report of a toxicologist they had procured at their

own cost.  The report concluded Plaintiffs should evacuate the house due to its high mold levels.

(Compl. ¶38.)  Defendant nevertheless required Plaintiffs to come forward with more evidence that

their property was uninhabitable, so again at their own expense Plaintiffs obtained three more

medical opinions.  These physicians also determined that Plaintiffs' health had been severely and

negatively impacted by toxic mold, and that they should leave the property.  (Compl. ¶¶39-40.)

After submission of these three new opinions, Defendant denied living expenses and demanded still

more medical data; Defendant then reversed itself and offered temporary living expenses.  Although

requesting all receipts related to Plaintiffs' vacation of their property, and promising reimbursement

for same, Defendant has failed to reimburse Plaintiffs' moving costs and expenses fully.  (Compl.

¶45.)  Plaintiffs' home has yet to have been remediated even partially for toxic mold.

ARGUMENT

The standards for adjudicating a motion made pursuant to Federal Rule of Civil Procedure

12(b)(6) are well known to the Court; it should suffice to say that a motion to dismiss must be

denied unless, and viewing all facts alleged as true and in a light most favorable to the plaintiff, the

complaint fails to set forth any facts that, under a reasonable interpretation, would justify the relief

plaintiff seeks.  Livornese v. Medical Protective Co., 219 F. Supp.2d 645, 647 (E.D. Pa. 2002).

Under this standard, Defendant's motion should be denied.

**I.      Plaintiffs' Negligence Claim Should Not Be Dismissed**

Defendant's motion to dismiss mischaracterizes the gravamen of Plaintiffs' negligence

claim.  Plaintiffs maintain in their Complaint that Defendant assumed a duty to provide accurate

information and care regarding Plaintiffs' early treatment of the water damage to their home.

Specifically, Plaintiffs allege that Defendant was in a position of superior knowledge regarding the

risks of harm that mold could cause and the fact that the water damage to Plaintiffs' house could

create such risks.  The Complaint maintains that Defendant nevertheless failed to properly warn or

apprise Plaintiffs of this risk and/or caused Plaintiffs to take actions that increased the risk that mold

would grow in their home and cause them harm.  This breach, as alleged in the Complaint, did

cause harm to Plaintiffs.  Plaintiffs therefore have pled all the elements of a negligence claim.

The "gist of the action" doctrine, invoked by Defendant, is inapplicable to Plaintiffs'

negligence claim.  The gist of the action rule prevents a party from repackaging an already-asserted

breach of contract claim as a tort.  PHICO Ins. Co. v. Presbyterian Medical Services Corp., 444 Pa.

Super. 221, 229, 663 A.2d 753, 757 (1995).  If the wrong complained of by a party is tortious, and

the existing contract merely a collateral matter, the tort claim is not precluded.  See id. at 228, 663

A.2d at 756.  In other words, if the plaintiff alleges the defendant violated socially-imposed duties,

rather than obligations imposed by contract, the gist of the action doctrine does not bar the

plaintiff's claim.  Etoll, Inc. v. Elias/Savion Advertising, Inc., No. 2091 WDA 2000, 2092 EDA

2000, 2002 WL 31491011, at *3 (Pa. Super. Ct. Nov. 8, 2002).  In the matter *sub judice*, Plaintiffs'

negligence cause of action is independent of the contractual relationship formed between the

parties, and not related to the underlying breach of contract claim Plaintiffs have asserted against

Defendant with respect to Defendant's failure to abide by the terms of the insurance policy.  In their

negligence claim, Plaintiffs contend Defendant created and assumed a duty, *separate* from

Defendant's contractual obligations, to guard Plaintiffs against the risk of mold contamination to

Plaintiffs' house.  Plaintiffs further contend that Defendant breached that duty by advising Plaintiffs

on what course of action they should take with respect to repairing the damage to their home after

the water damage occurred.  The damage caused by Defendant's negligence was the loss to

Plaintiffs' personal property as well as harm to Plaintiffs' health and well-being.  Thus, Plaintiffs'

negligence claim is not merely a restatement of the contention that Defendant failed to provide the

promised insurance coverage, but is a separate claim relating to a separately-created relationship

between the parties that relies on different operative facts. Under these circumstances, the gist of the action doctrine is no bar to Plaintiffs' negligence claim.

## II.    Plaintiffs' Unfair Trade Practices Consumer Protection Law Claim Should Not Be Dismissed

Defendant's argument with respect to the availability of a claim under Pennsylvania Unfair Trade Practices Consumer Protection Law, 73 P.S. §201-1, et seq. ("UTP-CPL") for an insurance consumer is correct insofar as it goes - if an insured merely alleges nonperformance of an insurance contract, no UTP-CPL claim is pled. However, the coverage of the UTP-CPL is broad, and it prohibits (among other things) the use of "fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. §201-2(4)(xxi). Pennsylvania courts thus allow an UTP-CPL action to proceed against an insurer if acts of *misfeasance* are alleged. Lites v. Great American Ins. Co., No. Civ. A. 00-CV-525, 2000 WL 875698, at *3-4 (E.D. Pa. June 23, 2000); Gordon v. Pennsylvania Blue Shield, 378 Pa. Super. 256, 264, 548 A.2d 600, 604 (1988). For purpose of such a claim, the improper performance of a contractual duty is considered misfeasance. Caplan v. Fellheimer, Eichen, Braverman & Kaskey, 5 F. Supp.2d 299, 302 (E.D. Pa. 1998). An insurer's engaging in fraudulent or confusing conduct, or making oppressive demands of the insureds, also is deemed misfeasance for purpose of a motion to dismiss. Wood v. Allstate Ins. Co., No. Civ. A. 96-4574, 1996 WL 637832, at *3 (E.D. Pa. Nov. 4, 1996). Allegations that the insurer attempted to frustrate and delay payment of a claim likewise state a cause of action under the UTP-CPL that survives a Rule 12(b)(6) motion. Lites, 2000 WL 875698, at *5.[3] Here, Plaintiffs' Complaint contains numerous allegations of instances in which Defendant took

---

[3] Nor is a plaintiff barred from using "boilerplate" language in pleading a claim under the UTP-CPL. See Lites, 2000 WL 875698, at *7.

affirmative acts that individually would qualify as misfeasance under Pennsylvania law. For instance, and as more fully discussed *supra*, Plaintiffs allege that Defendant required them to provide unnecessary and cumulative proof of medical injury from mold exposure, and that Plaintiffs pay for these experts. Plaintiffs also contend that at varying times Defendant denied coverage, but would later reinstate it, all to delay resolution of Plaintiffs' claim. Plaintiffs also allege that Defendant fraudulently charged them for coverage it did not intend to provide and set out to confuse them as to the extent of their coverage. See Schroeder v. Acceleration Life Ins. Co. of Pennsylvania, 972 F.2d 41, 46 (3d Cir. 1992)(promising benefits insurer never intended to pay sufficient to give rise to UTP-CPL liability). All of the above-listed conduct, and the other acts pled in the Complaint, demonstrate that Defendant is alleged to have done more than simply refusing to pay a claim, and that the conduct was fraudulent and deceptive. For purpose of adjudicating a FED. R. CIV. P. 12(b)(6) motion, Plaintiffs' pleading is sufficient to state a claim under the UTP-CPL.

## III.    Plaintiffs' Breach Of Fiduciary Duty Claim Should Not Be Dismissed

Defendant misstates the law regarding the availability of a breach of fiduciary duty claim for Plaintiffs. A fiduciary relationship exists when one party has reposed such confidence in another (due to the latter's special knowledge or skill) that they do not deal with each other on equal terms. D.O.T. v. E-Z Parks, Inc., 153 Pa. Commw. 258, 267, 620 A.2d 712, 717 (1993). A fiduciary relationship exists between insurers and their insureds. See Birth Center v. St. Paul Companies, Inc., 727 A.2d 1144, 1155 (Pa. Super. Ct. 1999), aff'd, 567 Pa. 386, 787 A.2d 376 (2001). Further, a breach of fiduciary duty claim can be pled under Pennsylvania law when an insurer assumes a duty beyond the mere provision of insurance coverage. See General Refractores Co. v. Liberty Mutual Ins. Co., No. Civ. A. 97-7494, 1999 WL 1134530, at *2 (E.D. Pa. Dec. 9, 1999); New

Concept Beauty Academy, Inc. v. Nationwide Mut. Ins. Co., No. Civ. A. 97-5406, 1997 WL

746203, at *3 (E.D. Pa. Dec. 1, 1997).  Here, Plaintiffs have alleged that Defendant and its agents

had knowledge superior to Plaintiffs regarding the danger of mold growth, that Defendant

voluntarily assumed the duty of instructing Plaintiffs on an appropriate way to repair the water

damage to Plaintiffs' house, and that these directives led to the growth of mold and its

accompanying damage.  Thus, Plaintiffs have alleged a fiduciary duty independent of State Farm's

obligation to cover Plaintiffs' claims under their contract of insurance.  It is the breach of this duty

that Plaintiffs have alleged Defendant has violated by the provision of faulty information regarding

repairs.  As such, this claim has been pled sufficiently to survive a motion to dismiss.

**IV.    Plaintiffs' Breach Of The Covenant Of Good Faith And Fair Dealing Claim Should Not Be Dismissed**

Again, Defendant does not accurately state Pennsylvania law.  An insurer maintains a duty

of good faith and fair dealing towards its insured.  Keefe v. Prudential Property and Casualty Ins.

Co., 203 F.3d 218, 227 (3d Cir. 2000); O'Donnell v. Allstate Ins. Co., 734 A.2d 901, 905 (Pa.

Super. Ct. 1999).  This obligation exists independently of the insurer's contractual duties.  Leo v.

State Farm Mut. Auto Ins. Co., 939 F. Supp. 1186, 1194 (E.D. Pa. 1996), aff'd, 116 F.3d 468 (3d

Cir. 1997).  Thus, an insured may bring a claim against an insurer with whom the former has

contracted for breach of the covenant of good faith and fair dealing.  Pennsylvania Chiropractic

Assoc. v. Independence Blue Cross, No. 2705, Control No. 111113, 2001 WL 1807781, at *4 n.11

(Phila. C.P. July 16, 2001); see Creeger Brick and Building Supply v. Mid-State Bank and Trust

Co., 385 Pa. Super. 30, 35, 560 A.2d 151, 153-54 (1989).  Plaintiffs allege that they contracted with

Defendant and that State Farm wrongfully frustrated Plaintiffs' receipt of the benefit of their

bargain, all in violation of Defendant's duty of good faith and fair dealing to Plaintiffs. These allegations are sufficient to allow the challenged cause of action to survive a motion to dismiss.

The D'Ambrosio decision, cited by Defendant, does not stand for the proposition Defendant posits. D'Ambrosio was expressly addressed by the Pennsylvania State Legislature when Pennsylvania's bad faith statute, 42 Pa. C.S.A. §8371, was crafted. See O'Donnell, 734 A.2d at 905. In addition, D'Ambrosio held only that no tort action exists for a breach of the duty of good faith and fair dealing; it did not alter long-standing Pennsylvania jurisprudence that such a claim may sound in contract. Keefe, No. Civ. A. 97-3312, 1998 WL 409011, at *4 (E.D. Pa. June 23, 1998), rev'd on other grounds, 203 F.3d 218 (3d Cir. 2000); see Birth Center, 567 Pa. at 401-02, 787 A.2d at 386. Since Plaintiffs' breach of the duty of good faith and fair dealing is contractually-derived, it is not impacted by D'Ambrosio.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request this Court deny Defendant's motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6).

BARLEY, SNYDER, SENFT & COHEN, LLC

Dated:_____          By:_____

Ronald H. Pollock, Jr., Esquire
Matthew H. Haverstick, Esquire
Attorneys for Plaintiffs

126 East King Street
Lancaster, PA  17602-2893
(717) 299-5201
Court I.D. No. 52586
Court I.D. No. 85072

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiffs' Complaint was served this _____ day of _____, 2002, by first class mail, postage prepaid, upon the following:

Lee E. Ullman, Esquire
Forry, Ullman, Ullman & Forry, P.C.
540 Court Street
P.O. Box 542
Reading, PA  19603

BARLEY, SNYDER, SENFT & COHEN, LLC

By:_____
        Ronald H. Pollock, Jr., Esquire
        Matthew H. Haverstick, Esquire
        Attorneys for Plaintiffs

        126 East King Street
        Lancaster, PA  17602-2893
        (717) 299-5201
        Court I.D. No. 52586
        Court I.D. No. 85072