```
FORRY, ULLMAN, ULLMAN & FORRY, P.C.      Attorney for Defendant,
BY:   LEE E. ULLMAN, ESQUIRE             State Farm Fire and Casualty Company
      Attorney ID #42428
540 COURT STREET
P O BOX 542
READING, PENNSYLVANIA 19603
(610) 777-5700
```

## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL B. McGUIRK and JEANNIE E. McGUIRK, Individually and on behalf of their minor children, MICHAEL J. McGUIRK, a minor, and THOMAS C. McGUIRK, a minor, | : : : : : : : : | CIVIL ACTION |
| Plaintiffs, | : : | No. 02-CV-4341 |
| vs. | : : | |
| STATE FARM FIRE & CASUALTY COMPANY, Defendant. | : : : | JUDGE FRANKLIN S. VAN ANTWERPEN |

**DEFENDANT STATE FARM FIRE & CASUALTY COMPANY'S**
**ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT**

Defendant State Farm Fire & Casualty Company ("State Farm"), by and through its attorneys, Forry, Ullman, Ullman & Forry, P.C., hereby files the following Answer and Affirmative Defenses to Plaintiffs' Complaint:

1. Admitted in part, denied in part. It is admitted upon information and belief that Plaintiffs are citizens of the Commonwealth of Pennsylvania. Defendant State Farm is an Illinois corporation in the business of insurance, with its principal place of business located at One State Farm Plaza, Bloomington, Illinois. It is admitted only that this Court has jurisdiction of this matter under 28 U.S.C. Section 1332, in that there is diversity of citizenship between Plaintiffs and State Farm and that Plaintiffs aver that the matter in controversy exceeds $75,000.00 exclusive of

interest and costs. It is specifically denied that Plaintiffs are entitled to recover any money, let alone in excess of $75,000.00.

2. It is admitted based on information and belief that Plaintiffs are adult individuals, husband and wife, with a permanent residence at 66 Apricot Lane, Leola, Pennsylvania and temporarily residing at 638 Bentley Ridge Boulevard, Lancaster, Pennsylvania. Based upon information and belief, Plaintiffs have two minor children, however, State Farm is without knowledge or information sufficient to form a belief as to the ages and birthdays of the minor children.

3. It is admitted based on information and belief that Plaintiffs are adult individuals, husband and wife, with a permanent residence at 66 Apricot Lane, Leola, Pennsylvania and temporarily residing at 638 Bentley Ridge Boulevard, Lancaster, Pennsylvania. Based upon information and belief, Plaintiffs have two minor children, however, State Farm is without knowledge or information sufficient to from a belief as to the ages and birthdays of the minor children.

4. Admitted.

5. Denied as stated. It is admitted only that on June 28, 2000, the date of loss, Plaintiffs were insured by State Farm pursuant to a homeowner's policy of insurance, policy number 38-G6-3680-4, subject to all terms, conditions, limitations and exclusions contained therein. It is admitted that Exhibit A represents part of the subject policy of insurance, however, it is missing pages including the Declaration Page and endorsements.

6. Denied. The policy of insurance is a document in writing which speaks for itself.

7. Denied as stated. It is admitted only that on June 28, 2000, the date of loss, Plaintiffs were insured by State Farm pursuant to a homeowner's policy of insurance, policy number 38-G6-3680-4, subject to all terms, conditions, limitations and exclusions contained therein, and that Plaintiffs paid premiums for this policy.

8. Denied as stated. It is admitted only that Plaintiffs advised State Farm that on June 28, 2000, their home was damaged by water which entered the addition to plaintiffs' home.

9. Denied as stated. It is admitted only that on June 29, 2000, Plaintiffs reported the loss to their State Farm agent.

10. Denied. State Farm is without knowledge or information sufficient to form a belief as to the truth of the averments set forth in paragraph 10. By way of further denial, J. Wilbur Sollenberger is not an employee of State Farm but rather an independent agent.

11. Denied as stated. It is admitted only that State Farm received from Purofirst of Conestoga Valley an estimate of damages to Plaintiffs' home regarding the June 28, 2000 loss, and that Purofirst inspected the loss on June 30, 2000, the day after the Plaintiffs reported the loss.

12. Denied. It is expressly denied that Purofirst of Conestoga was acting as an agent of State Farm. It is further denied that Purofirst recommended the use of the funds provided for repair to the drywall to repair the roof. It is specifically

3

denied that State Farm "accepted and adopted Purofirst of Conestoga Valley's position and advised Plaintiffs to use the funds provided for the drywall towards the repair of the roof." To the contrary, State Farm promptly paid the claim based on the estimate of damages prepared by Purofirst and State Farm's own investigation. It is specifically denied that State Farm advised Plaintiffs how to use the money it paid as damages for the loss. Plaintiffs were well aware, and discussed with State Farm, the fact that the addition to their home had construction defects and that they had problems with the roof. State Farm advised Plaintiffs that these construction/installation defects were not a covered loss under the policy. Despite their knowledge of the construction/installation defects, Plaintiffs chose not to correct the problems.

    13. Denied. It is specifically denied that Tony Spalding told Plaintiffs to "let the drywall dry out." On the contrary, the money paid by State Farm was to compensate Plaintiffs for covered damages as a result of the water loss. Plaintiffs, however, failed to make any repairs to the water-damaged areas or fix their faulty roof.

    14. Denied. It is specifically denied that State Farm ever advised Plaintiffs "not to remove and replace the drywall in the addition at the Plaintiffs home but to let it dry out, and refused to replace the carpet." On the contrary, State Farm promptly investigated and issued payment to the Plaintiffs in order to repair the water-damaged areas, including the drywall. Unfortunately, Plaintiffs chose not to make any repairs, correct the water problem or mitigate their damages in any manner.

Consequently, eight months after the loss Plaintiffs advised State Farm that they had a "mold" problem in the area where the water damage occurred.

15. Denied. It is specifically denied that mold was present during the inspection by Purofirst or that Plaintiffs pointed out any mold to Purofirst or State Farm. To the contrary, the first notice to State Farm of any "mold" problem was in February 2001, more than eight months after the loss. State Farm is without information or knowledge sufficient to form a belief as to the truth of whether or not Plaintiffs attempted to remove visible mold or at what time such purported attempts were made.

16. Admitted in part, denied in part. It is specifically denied that State Farm "accept[ed] that Plaintiffs' loss was a covered loss under the policy." To the contrary, State Farm specifically advised Plaintiffs which portions of the damage were covered under the policy and which portions were not. It is admitted only that on July 5, 2000, seven days after the loss was reported, State Farm issued a check to Plaintiffs representing payment for all covered portions of Plaintiffs' water damage claim. The total damage estimate for the covered portions of the loss was in the amount of $1,340.68, less the $500.00 deductible for a total net payment of $840.68.

17. Admitted in part, denied in part. State Farm denies that there was any damage to the roof shingles or gutter. As such, there was no coverage for the roof. Purofirst determined that the roof was improperly designed and constructed, a conclusion with which Plaintiffs agreed. It is admitted that State Farm paid for

all covered "interior" damage and tendered Plaintiffs a check in the amount of $840.68.

18. Denied as stated. State Farm sent a letter to Plaintiffs regarding the covered and uncovered portions of the claim, and cited the relevant/applicable policy provisions.

19. Denied. It is specifically denied that State Farm did not investigate the claim and roof problems. To the contrary, on June 30, 2000, one day after the loss was reported, Purofirst inspected the loss. Purofirst provided State Farm with a written estimate of damages and at the request of Plaintiffs provided a letter regarding the faulty roof design/construction.

20. Denied. State Farm is without knowledge or information sufficient to form a belief as to the truth of the averments set forth in paragraph 20.

21. Denied. State Farm is without knowledge or information sufficient to form a belief as to the truth of the averments set forth in paragraph 21.

22. Denied. On February 26, 2001, eight months after the June 28, 2000 water loss, Plaintiffs notified State Farm for the first time that they had mold located in the addition to their home. At that time, Plaintiffs advised they still had made no repairs as a result of the water damage and faulty roof.

23. Denied as stated. It is denied that State Farm "eventually agreed to consider the Plaintiffs' situation" after several phone calls. On the contrary, State Farm promptly reinspected the loss on March 1, 2001, three days after notice of a mold problem.

6

24. Denied. It is denied that State Farm requested Plaintiffs to conduct "amateur sampling" procedures and enclosing methods.

25. Admitted in part, denied in part. It is denied that State Farm requested Plaintiffs to conduct amateur sampling and enclosing methods. State Farm did retain a Certified Industrial Hygienist, T. Hans Derr of Karl & Associates, to inspect the loss to determine the need for potential bioaerosol testing and evaluation.

26. Denied as stated. It is admitted only that on March 9, 2001, T. Hans Derr and Claims Specialist Lori Smith inspected the loss. Also present were Plaintiff Jeannie McGuirk and her attorney, Gary Efstration.

27. Admitted in part, denied in part. It is admitted only that on March 9, 2001, Plaintiff Jeannie McGuirk demanded Mr. Derr test various areas of the home. It is denied that State Farm refused to pay for any inspection and/or testing recommended by Mr. Derr. It is admitted that Mr. Derr returned on March 12, 2001 to complete testing because his moisture reader was not working properly on March 9, 2001.

28. Admitted in part, denied in part. It is admitted only that by letter to her insurance agent dated March 14, 2001, Plaintiff Jeannie McGuirk made numerous accusations. It is further admitted that Mr. Derr conducted additional testing on May 18, 2001. The remaining averments contained in Paragraph 28 are denied.

29. Denied. On March 17, 2001, State Farm sent Plaintiffs a copy of the preliminary findings of the industrial hygienist retained by State Farm, and advised Plaintiffs that it was unable to issue any payment until the cause of the mold was determined. Upon receipt of the industrial hygienist's final report, State Farm sent Plaintiffs a copy of the report and advised Plaintiffs that based on the findings in the report, "coverage will be provided in order to complete the mold remediation process to the rear addition" of Plaintiffs' home. It is admitted that a copy of the March 17th letter is attached as Exhibit B to Plaintiffs' Complaint.

30. Admitted in part, denied in part. It is admitted only that on or about March 28, 2001, State Farm received a copy of Mr. Derr's final laboratory results, which State Farm immediately forwarded to Attorney Efstration on March 28, 2001. It is specifically denied that the test revealed significant amounts of toxic molds and bacteria. A copy of Ms. Smith's March 28th letter is attached as Exhibit C to Plaintiffs' Complaint.

31. Denied as stated. Upon the recommendation of Mr. Derr, on March 31, 2001 Mr. Derr and Service Master constructed a barrier wall at the Plaintiffs' home. The Plaintiffs, however, refused to allow Mr. Derr to conduct air sampling and a site review with Service Master before construction of the barrier wall. The Plaintiffs also demanded a door be installed in the barrier wall, over objections by Mr. Derr and Service Master. A copy of a letter dated March 26, 2001 is attached as Exhibit D to Plaintiffs' Complaint.

32. Denied. The letter dated April 6, 2001 is a document in writing, which speaks for itself. It is specifically denied that the home had "extremely high positive readings of toxic mold" and that the home was uninhabitable. State Farm requested additional testing and copies of Plaintiffs' medical records with reference to the alleged illnesses of the Plaintiffs.

33. Denied. To the contrary, State Farm has provided Additional Living Expenses despite Plaintiffs' failure for more than two years to take any steps to mitigate their damages as well as having prevented State Farm from conducting remediation of the home. Pursuant to the terms and conditions of the policy of insurance and Pennsylvania law, it is the duty of Plaintiffs to prove they have a valid claim and are entitled to coverage under the policy.

34. Denied. The letter dated April 19, 2001, and the enclosed reports are documents in writing which speak for themselves.

35. Denied. The letter dated April 30, 2001 is a document in writing which speaks for itself.

36. Denied. It is denied that State Farm failed to answer Plaintiffs' questions. The letters dated May 4, 2001 and May 9, 2001 are documents in writing which speak for themselves.

37. Denied as stated. It is admitted only that Dr. Richard Lipsey issued a report on May 10, 2001. The report is a document in writing which speaks for itself. It is specifically denied that Dr. Lipsey's recitation of the facts, opinions and conclusions are correct.

38. Denied as stated. It is admitted only that in May 2001 Plaintiffs requested ALE coverage. Despite State Farm's repeated requests, Plaintiffs refused to permit State Farm or its industrial hygienist into their home to conduct necessary testing and also failed to provide copies of their medical records to State Farm. Pursuant to the terms and conditions of the policy of insurance and Pennsylvania law, it is the duty of Plaintiffs to prove they have a valid claim and are entitled to coverage under the policy.

39. Denied as stated. It is admitted only that by letter dated May 18, 2001, Attorney Efstration sent State Farm two letters from physicians. The letters are documents in writing which speak for themselves.

40. Admitted in part, denied in part. It is admitted only that by letter dated June 4, 2001, Attorney Efstration sent State Farm a copy of a May 24, 2001 letter authored by Dr. Gunnar Heuser. Those letters are documents in writing which speak for themselves.

41. Denied. The letter dated June 4, 2001 is a document in writing which speaks for itself.

42. Denied. By letter dated June 6, 2001, State Farm advised Plaintiffs that ALE coverage was denied since an insured loss did not cause the home to become uninhabitable. Based upon further investigation, by letter dated June 11, 2001, State Farm advised Plaintiffs that ALE coverage would apply during the restoration period. The letters are documents in writing and speak for themselves.

43. Denied. State Farm is without information or knowledge of the date Plaintiffs moved out of their home; whether Plaintiffs

suffered "substantial deterioration because of the health problems caused and danger presented by the toxic mold presence in their home"; or whether Plaintiffs have abandoned virtually all their personal property and other articles of property inside their home. It is specifically denied that their personal property is "unremediable as a practical matter."

44. Denied. By letter dated June 11, 2001, State Farm advised Plaintiffs that ALE coverage would apply during the restoration period. The letter is a document in writing and speaks for itself.

45. Admitted in part, denied in part. It is admitted that State Farm repeatedly requested information regarding Plaintiffs' additional living expenses but Plaintiffs have failed to provide the requested information to support their claim. It is denied that Plaintiffs provided sufficient information to support their claim in July 2001.

46. Denied. It is specifically denied that State Farm did not provide information regarding Mr. Derr. All reports and testing results tendered by Mr. Derr have been provided to Plaintiffs. Further, State Farm has consistently advised Plaintiffs of State Farm's coverage positions. Plaintiffs, however, refuse to mitigate their loss or permit State Farm to commence remediation, while at the same time accuse State Farm of failing to resolve their claim.

47. Denied. It is specifically denied that State Farm did not provide information regarding Mr. Derr. All reports and testing results tendered by Mr. Derr have been provided to

Plaintiffs. Further, it is denied that State Farm insisted Plaintiffs utilize Mr. Derr and Service Master. Plaintiffs refused to permit these individuals/companies to commence work yet, on the other hand, refused to mitigate their damages or take any action toward commencing remediation.

48. Denied. It is specifically denied that State Farm has ignored questions and requests by Plaintiffs. To the contrary, Plaintiffs have failed to mitigate their loss, make any repairs since June 2000, have failed to permit State Farm to commence remediation and have failed to make any attempts on their own to remediate their home. In an attempt to move this case from a standstill, State Farm agreed to pay the cost for the preparation of a remediation plan by a qualified company of Plaintiffs' choice. It is admitted that Plaintiffs selected Mr. Montz, who submitted a proposed plan. It is denied that State Farm refused to pay for this proposal. To the contrary, State Farm clarified the items contained in Mr. Montz' plan that were not covered under the policy of insurance. It is specifically denied that State Farm "desired that Plaintiffs shave off various aspects of the remediation evaluation in order to save money and because the Defendant now refused to provide remediation coverage for the personal property alleging that the personal property was not a covered loss." State Farm consistently advised Plaintiffs that the policy did not provide coverage for damages to personal property due to mold.

49. Denied. The claim has been at a "standstill" since February 2001 due to Plaintiffs' conduct and refusal to permit testing and remediation.

50. State Farm incorporates by reference its answers in paragraphs 1 through 49 as if set forth at length herein.

51. Denied as a conclusion of law.

52. (a) – (g) Denied as conclusions of law.

**WHEREFORE,** Defendant State Farm Fire and Casualty Company requests judgment in its favor and against Plaintiffs.

53. State Farm incorporates by reference its answers in paragraphs 1 through 52 as if set forth at length herein.

54. It is admitted that State Farm insured Plaintiffs' home in June 2000.

55. Denied as a conclusion of law. By way of further denial, State Farm paid Plaintiffs' water damage claim and has been prevented by Plaintiffs from resolving the covered portions of their mold claim.

56. Denied as a conclusion of law.

57. Denied as a conclusion of law.

58. Denied as a conclusion of law.

59. Admitted.

60. Admitted in part, denied in part. It is admitted that Plaintiffs filed a prior civil action in this Court against State Farm, captioned: "<u>Michael B. McGuirk and Jeannie E. McGuirk, h/w v. State Farm Fire & Casualty Insurance Company</u>", docket number 01-CV-4472. That action purports to allege a breach of contract action against State Farm, and is currently pending before this Court. Plaintiffs also filed a civil action for this same loss against State Farm in the Court of Common Pleas of Lancaster County, Pennsylvania, but have since dismissed that action.

61. Denied as a conclusion of law.

62. Denied as a conclusion of law.

63. (a) – (g). Denied as conclusions of law.

**WHEREFORE**, Defendant State Farm Fire and Casualty Company requests judgment in its favor and against Plaintiffs.

64. State Farm incorporates by reference its answers in paragraphs 1 through 63 as if set forth at length herein.

65. Denied as a conclusion of law.

66. (a) – (f) Denied as conclusions of law.

67. Denied as a conclusion of law.

68. Denied as a conclusion of law.

69. Denied as a conclusion of law.

70. Denied as a conclusion of law.

71. Denied as a conclusion of law.

72. Denied as a conclusion of law.

73. Denied as a conclusion of law.

74. Denied as a conclusion of law.

75. Denied as a conclusion of law.

76. Denied. State Farm is without information or knowledge sufficient to form a belief as to the truth of the averments in paragraph 76 of Plaintiffs' Complaint.

77. Denied as a conclusion of law. By way if further response, State Farm is without information or knowledge sufficient to form a belief as to the truth of the averments in paragraph 77 of Plaintiffs' Complaint.

78. Denied as a conclusion of law. By way of further response, State Farm is without information or knowledge sufficient

to form a belief as to the truth of the averments in paragraph 78 of Plaintiffs' Complaint.

79. Denied as a conclusion of law.

**WHEREFORE,** Defendant State Farm Fire and Casualty Company requests judgment in its favor and against Plaintiffs.

80. State Farm incorporates by reference its answers in paragraphs 1 through 79 as if set forth at length herein.

81. Denied as a conclusion of law.

82. Denied as a conclusion of law.

83. Denied as a conclusion of law.

84. Denied as a conclusion of law.

**WHEREFORE,** Defendant State Farm Fire and Casualty Company requests judgment in its favor and against Plaintiffs.

85. State Farm incorporates by reference its answers in paragraphs 1 through 84 as if set forth at length herein.

86. Denied as a conclusion of law.

87. Denied as a conclusion of law.

88. (a) – (h) Denied as conclusions of law.

89. Denied as a conclusion of law.

90. Denied as a conclusion of law.

**WHEREFORE,** Defendant State Farm Fire and Casualty Company requests judgment in its favor and against Plaintiffs.

91. State Farm incorporates by reference its answers in paragraphs 1 through 84 as if set forth at length herein.

92. (a) – (b) Denied as conclusions of law.

93. Denied as a conclusion of law.

**WHEREFORE,** Defendant State Farm Fire and Casualty Company requests judgment in its favor and against Plaintiffs.

94.  State Farm incorporates by reference its answers in paragraphs 1 through 93 as if set forth at length herein.

95.  Denied as a conclusion of law.

**WHEREFORE,** Defendant State Farm Fire and Casualty Company respectfully requests judgment in its favor and against Plaintiffs.

## AFFIRMATIVE DEFENSES

1.  Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

2.  On July 5, 2000, State Farm paid Plaintiffs the amount of the estimate to repair the damages caused by the June 28, 2000 water loss.

3.  State Farm did not breach its policy of insurance with Plaintiffs with regard to the June 28, 2000 water damage loss.

4.  State Farm never denied Plaintiffs' subsequent mold claim and, in fact, has attempted to remediate the mold since March 2001.

5.  Plaintiffs have delayed the remediation process from March 2001 through the present.  Moreover, Plaintiffs have refused any qualified remediation company to perform remediation work.

6.  Plaintiffs have never made repairs to the areas damaged by the June 28, 2000 loss, despite payment by State Farm.

7.  Plaintiffs have failed to take any remedial action to alleviate the mold problem in their home.

8.  Plaintiffs contend they have a severe mold problem in their home yet they refuse to take any action to remediate the mold and refuse to permit State Farm to remediate the mold.

9. Since at least February 2001, mold has been present in the Plaintiffs' home but no action has been taken by Plaintiffs to eliminate the mold or prevent further mold growth.

10. Plaintiffs have failed to mitigate the mold loss in violation of the policy's terms and conditions.

11. Plaintiffs have failed to mitigate the sources of the water infiltration into their home, which resulted in the mold problem. Plaintiffs' failure to mitigate the loss violates the policy's terms and conditions.

12. State Farm has agreed to extend Additional Living Expense ("ALE") coverage to Plaintiffs and is currently paying ALE benefits.

13. State Farm has not breached the policy of insurance in regard to ALE coverage.

14. Plaintiffs have repeatedly delayed State Farm's investigation, refused remediation work, and refused to produce or delayed in producing requested information all in violation of the policy's terms and conditions.

15. Plaintiffs' claims are barred by the doctrines of payment and accord and satisfaction.

16. Plaintiffs' claims are barred by their failure to mitigate damages and failure to cooperate in violation of the applicable policy's terms and conditions.

17. At all times material hereto, State Farm has acted in good faith and fair dealing in the handling of Plaintiff's claim.

**WHEREFORE,** Defendant State Farm Fire & Casualty Company respectfully requests that this Court enter judgment for State Farm and against Plaintiffs.

                        Respectfully submitted,

                        **FORRY, ULLMAN, ULLMAN & FORRY, P.C.**

Dated: 12/13/02      By: _____
                              LEE E. ULLMAN, ESQUIRE
                              540 Court Street, P.O. Box 542
                              Reading, PA 19603
                              610 777-5700